# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:20 CV 119 MOC WCM

| | | |
|---|---|---|
| ANGELA SUE LIVELY and LOUIS LIVELY | ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| ROGER LANE REED and REED AND SONS, INC., *d/b/a* *Reed's Used Auto Parts/Reed's Auto Parts* | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Plaintiffs' Motion to Compel (Doc. 24). The Motion is fully briefed and is ripe for ruling. Docs. 25, 27, 28.

## I.    The Discovery Dispute

This case arises out of a motor vehicle accident. Plaintiffs allege that a vehicle operated by Angela Sue Lively was struck by a vehicle that was operated by Roger Lane Reed ("Reed") and owned by Reed and Sons, Inc., doing business as Reed's Used Auto Parts / Reed's Auto Parts ("Reed's Auto Parts").

The Motion to Compel involves a dispute over information regarding Defendants' insurance coverage. Defendants state that they have produced copies of three insurance policies: (1) a commercial auto policy issued to Reed's Auto Parts; (2) an umbrella policy issued to Reed's Auto Parts, and (3) a

1

personal auto policy issued to Reed. Doc. 27 at 7. Plaintiffs acknowledge the production of these policies,[1] and the parties appear to agree that these documents indicate policy limits totaling $2,000,000.00. See Doc. 25 at 9; Doc. 27 at 7.

Plaintiffs, however, seek the production of other documents related to Defendants' insurance coverage. Specifically, Plaintiffs ask that Defendants be required to produce documents through which Defendants' insurance carrier has agreed to provide coverage for a judgment that may exceed the available policy limits.

Plaintiffs primarily contend that such an agreement would constitute an "insurance agreement" that must be disclosed pursuant to Rule 26(a)(1)(A)(iv). Doc 25 at 8. In the alternative, Plaintiffs assert that this information should be produced in response to a document request they have served which seeks "any and all agreements and/or correspondence that reflect any agreement by any insurance or indemnity company to cover any excess verdict that may result from the trial of this case" ("Request 15"). Doc. 25 at 8, n. 1.

In response, Defendants argue that Rule 26(a)(1)(A)(iv) "covers policies – not communications about insurance policies or coverage." Doc. 27 at 8.

---

[1] Plaintiffs state that these policies were not produced until January 11, 2021 and only after Plaintiffs' counsel requested them. Doc. 25 at 8.

Defendants further contend that Request 15 does not seek relevant information.  Doc. 27 at 13-15.

## II.  Legal Standards

Rule 26(a)(1)(A) of the Rules of Civil Procedure requires that, unless otherwise stipulated or ordered by the court, parties provide certain information to the other parties to an action even without a discovery request. The information to be produced in a party's initial disclosures includes "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv).  A motion to compel may be filed where a party fails to make its initial disclosures. Fed. R. Civ. P. 37(a)(3)(A).

## III.  Discussion

### A. Documents Sought

An initial issue here is the identification of the specific documents Plaintiffs seek to obtain. By the Motion to Compel, Plaintiffs ask that Defendants be required "to disclose all insurance coverage related to this action including any excess protection whereby any insurance carrier, including Reed's Auto Parts' insurance carrier Star Insurance Company, has agreed to pay any judgment that exceeds the represented $2 million policy limits or

3

indemnify defendants for same." Doc. 24 at 1. Plaintiffs contend that agreements through which an insurance carrier agrees to pay more than its policy limits "may be referred to as 'comfort,' 'blue sky,' 'excess assurance protection,' or 'excess insurance protection' letters." Doc. 25 at 8. In support of this position, Plaintiffs cite to <u>King v. Allstate Ins. Co.</u>, No. 11-CV-00103-WJM-BNB, 2013 WL 4461593 (D. Colo. Aug. 20, 2013) in which the following appears:

> At his deposition, Mr. Kaudy testified that Allstate could have or should have offered a "comfort letter" to Ms. Lauk. A "comfort letter" is given to an insured by his or her insurer in advance of trial. In a "comfort letter", the insurer typically waives the policy limit and agrees to pay the full amount of any excess judgment.
>
> <u>King</u>, 2013 WL 4461593, at *6.

According to Plaintiffs, Defendants have refused to state whether any such letter agreements exist. Plaintiffs assert that such a letter agreement "is an insurance agreement by definition and merely modifies or amends the existing policy limits" and therefore this Court should "order defendants to acknowledge whether such an insurance agreement exists" and, assuming such an agreement does exist, allow Plaintiffs to inspect and copy the agreement.

Defendants have not, in opposition to the Motion to Compel, argued that the documents Plaintiffs seek do not exist. Doc. 25 at 8. Similarly, in response

4

to Request 15, Defendants only objected on relevancy grounds[2] and did not state that documents responsive to Request 15 do not exist. Therefore, and setting aside the question of whether Defendants' response to Request 15 is complete, it appears from the record that at least some documents of the type Plaintiffs are seeking may exist such that a ruling on the Motion to Compel would be proper. See e.g., Patrick v. Teays Valley Trustees, LLC, 297 F.R.D. 248, 259 (N.D. W. Va. 2013) (explaining that while a court cannot compel a party to produce documents based solely on speculation that such documents may exist, plaintiffs had "good reason to suspect" that defendant was withholding responsive documents based on defendant's response that it was producing documents "to the extent they are discoverable" and concluding that "[b]y stating to Plaintiffs that it will produce all documents it determines to be relevant, Defendant's response 'hides the ball' by leaving Plaintiffs 'wondering ... what documents are being withheld.'") (quoting Athridge v. Aetna Casualty and Surety Co., 184 F.R.D. 181, 190 (D.D.C.1998)).

### B. Initial Disclosures

As noted by one court, "[a] plain reading of [the initial disclosure rule] indicates it is clearly designed for parties to produce documentation of any insurance policies that give rise to an insurer's obligation to indemnify or hold

---

[2] Defendants did not object to Request 15 based on an assertion of attorney-client privilege, work product protection, or other confidentiality concerns.

its insured harmless for a judgment." Excelsior Coll. v. Frye, 233 F.R.D. 583, 585 (S.D. Cal. 2006).

Further, the history of Rule 26 is informative. The Advisory Committee Notes for the 1970 Amendments to Rule 26 include a lengthy discussion of "whether defendant's liability insurance coverage is subject to discovery in the usual situation when the insurance coverage is not itself admissible and does not bear on another issue in the case." While recognizing a close division in the case law, the 1970 Amendment resolved the issue "in favor of disclosure," explaining that:

> Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, though in others it may have an opposite effect. The amendment is limited to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy.

In 1993, the Rule was amended to impose on parties a duty of disclosure, without awaiting a formal discovery request. See Advisory Committee Notes

for the 1993 Amendment.[3]  See also Aecon Buildings, Inc. v. Zurich North
America, No. C07-832MJP, 2008 WL 3927797, at *3 (W.D. Wash. Aug. 21,
2008) ("The purpose of [Rule 26(a)(1)(A)(iv)] includes 'enabl[ing] counsel for
both sides to make the same realistic appraisal of the case, so that settlement
and litigation strategy are based on knowledge and not speculation.") (citing
1970 Advisory Committee Notes).

Here, Plaintiffs argue that if Defendants' insurer agreed to provide
excess insurance protection in this case, "that insurance agreement constitutes
an 'insurance agreement'" within the scope of Defendants' Rule 26(a)(1)(A)
initial disclosure obligations. Doc. 25 at 10.  In contrast, Defendants' contend
that only liability insurance policies themselves qualify as "insurance
agreements" under the Rule.  See Doc. 27 at 2.

The authorities the parties have submitted do not address this issue
precisely.  See Excelsior, 233 F.R.D. at 585 ("Not surprisingly, there is no
published case law defining specifically what insurance information must be
produced pursuant to [the initial disclosure rule], and what is not required").

Plaintiffs' cases focus on the production of excess insurance policies as
part of a party's initial disclosure obligations, not whether letter agreements

---

[3] The Advisory Committee Notes for the 2000 Amendments state that even where a case is "exempted from initial disclosure…the insurance information described…should be subject to discovery…."

7

of the sort alleged here must be produced with the initial disclosures. See e.g., Regalado v. Techtronic Industries North America, Inc., No. 3:13-cv-4267-L, 2015 WL 10818616 (N.D. Tex. Feb. 24, 2015) (requiring production of excess insurance policy pursuant to Rule 26(a)(1)(A)(iv)); Rivera v. United States, No. EP-15-CV-21-KC, 2015 WL 13649403 (W.D. Tex. Dec. 22, 2015) (requiring production of excess and umbrella coverages pursuant to Rule (a)(1)(A)(iv)); N.T. by and through Nelson v. Children's Hospital Medical Center, No. 1:13cv230, 2017 WL 5953432 (S.D. Ohio June 30, 2017) (ordering production of excess policies pursuant to Rule (a)(1)(A)(iv)).[4]

Defendants' cases reference the production of communications regarding policies and insurance coverage but not whether the type of letter agreement described by Plaintiffs should be considered an "agreement" for purposes of the initial disclosures. See e.g., S. Rehab. Network v. Sharpe, No. 5:99CV353-BR, 2000 WL 33682699 (E.D.N.C. Jan. 14, 2000) (denying plaintiff's motion to compel production of correspondence between insurer and insured possibly containing information related to the conditions and the amount of coverage where plaintiff had been previously provided with the policy itself); Excelsior,

---

[4] Plaintiffs also cite Lee v. State Farm Mut. Auto Ins. Co., 249 F.R.D. 662 (D. Col. March 3, 2008), which dealt with, among other things, the existence of an "excess assurance protection" ("EAP") letter in the context of a bad faith claim against the insurer. The Lee court did not, however, consider the EAP letter in the context of the required initial disclosures.

233 F.R.D. at 586 (initial disclosure rule did not require insurer to disclose release or settlement agreements with defendants regarding insurer's obligations or liability under the policy or documents setting forth the amount of the policy remaining); <u>Native American Arts, Inc. v. Bundy–Howard</u>, No. 01 C 1618, 2003 WL 1524649 (N.D. Ill. March 20, 2003) (initial disclosure rule's reference to "any insurance agreement" did not embrace an insurer's reservation of rights letter, and holding the plaintiff was entitled to nothing more than the insurance policies themselves).

Plaintiffs' briefing confirms that Plaintiffs seek only the disclosure of any agreement by Defendants' insurer to provide coverage in excess of the limits set out in the previously produced policies. <u>See</u> Doc. 28 at 10 ("the Livelys are not asking this Court to compel the disclosure of a 'reservation of right' letter, 'the costs of the defense' or any agreement with respect to a 'change of counsel' in this case. Instead, they are asking this Court to compel the disclosure of Star Insurance Company's agreement to provide excess insurance protection in this case").

Having considered the parties' arguments and applicable authorities, the undersigned is persuaded that to the extent Defendants' insurance company has provided Defendants with a letter in which the carrier agrees to satisfy all or part of a possible judgment in this action or to indemnify or reimburse Defendants for payments made to satisfy such a judgment, in

amounts over and above the limits of the coverage described by the policies previously provided, such information should be produced to Plaintiffs. That is, for the purposes of Rule 26(a)(1)(A)(iv), there would appear to be no meaningful distinction between an insurance carrier's commitment to pay such sums when the agreement is written in the traditional form of an insurance policy and when the agreement is written more informally on the insurance company's letterhead.  See Excelsior, 233 F.R.D. at 586 (the initial disclosure rule requires "the disclosure of an insurance policy *or other agreement* that gives rise to an insurer's obligation to indemnify or hold its insured harmless for a judgment….")(emphasis added).[5]

   **IT IS THEREFORE ORDERED** that:

1. The Motion to Compel (Doc. 24) is **GRANTED IN PART** and Defendants are directed, on or before April 12, 2021, to make available for inspection and copying any agreement by which Defendants' insurer has agreed to satisfy all or part of a possible judgment in this action or to indemnify or reimburse Defendants for payments made to satisfy such a judgment, in amounts over and

---

[5] The undersigned does not reach Plaintiffs' alternative argument that any pertinent letter agreements should likewise be produced in response to Request 15. Further, it is likewise unnecessary to address the question of whether other information related to applicable insurance agreements, beyond the agreements themselves, should be produced by Defendants in response to Request 15 as the Motion to Compel does not appear to seek such information.

above the amount of the coverages as represented in the insurance policies previously produced.

2. The Motion to Compel is **DENIED** in all other respects.

Signed: March 26, 2021

W. Carleton Metcalf
United States Magistrate Judge