IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 119 MOC WCM

| | |
|---|---|
| ANGELA SUE LIVELY and<br>LOUIS LIVELY<br><br>      Plaintiffs,<br><br>v.<br><br>ROGER LANE REED and<br>REED AND SONS, INC., *d/b/a*<br>*Reed's Used Auto Parts/Reed's Auto Parts*<br><br>      Defendants. | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the Court on Plaintiffs' Motion for Sanctions (the "Motion for Sanctions," Doc. 42).

I. Relevant Background

A. Procedural History

This case revolves around a motor vehicle accident that occurred on March 15, 2018 in which a vehicle operated by Angela Sue Lively was struck from behind on Interstate 26 by a Chevrolet truck owned by Defendant Reed and Sons, Inc., d/b/a Reed's Used Auto Parts/Reed's Auto Parts ("Reed and Sons") and operated by Defendant Robert Lane Reed.

On March 23, 2020, Ms. Lively and her husband, Louis Lively (collectively "Plaintiffs"), filed a complaint in the Superior Court of Buncombe

1

County, North Carolina. Doc. 1-2. The matter was removed to this Court on May 15, 2020. Doc. 1.

The District Court denied a Motion to Dismiss/Motion for Partial Judgment on the Pleadings by Reed and Sons on August 10, 2020 (Doc. 13) and a Pretrial Order and Case Management Plan (the "Pretrial Order") was entered on August 28, 2020. Doc. 15. Pursuant to the Pretrial Order, the period of court-enforceable discovery was to conclude by June 7, 2021 and dispositive motions were to be filed by July 6, 2021, with trial being set for December 6, 2021.

During discovery, the undersigned dealt with and resolved certain discovery issues.

Shortly before the end of the discovery period, numerous other disputes arose. Those disputes pertained to various discovery issues as well as the issues that form the basis of the Motion for Sanctions. The parties submitted hundreds of pages of briefing and supporting materials in relation to the various matters and the undersigned conducted a hearing on them, including the Motion for Sanctions, on July 14, 2021.

The undersigned has addressed the discovery related disputes in a separate Order. Because Plaintiffs' Motion for Sanctions seeks the imposition of sanctions pursuant to the Court's inherent powers, see Doc. 42 at 1; Doc. 42-1 at 9-10, the undersigned issues this Memorandum and Recommendation for

consideration by the presiding District Judge. See In Re: Honorable Max O. Cogburn, Jr., Presiding Judge; Referrals to Magistrate Judges in the Western District of North Carolina, No. 3:11-mc-00025, Doc. 2, Amended Order ("motions for sanctions sought or issued under the court's inherent authority…shall be by a Memorandum and Recommendation") (citing <u>Reddick v. White</u>, 456 Fed. Appx. 191, 193 (4th Cir. 2011) (unpubl.)).

### B. Factual Background

The factual background relevant to the Motion for Sanctions comes from the parties' filings, including a detailed affidavit submitted by defense counsel,[1] and the representations of the attorneys during the July 14, 2021 hearing.

In brief, Plaintiffs contend that defense counsel improperly communicated with Ms. Lively's treating physicians and/or their counsel.

Plaintiffs state that, to treat her physical injuries sustained in the subject accident, Ms. Lively "visited several healthcare facilities, including Complete Care Center, LLC, in Longwood, Florida." Doc. 42-1 at 6. The precise corporate structure and organization of Complete Care Center, LLC ("Complete Care") and its related entities is not clear. However, Complete Care appears to be associated with certain medical practices; Plaintiffs describe

---

[1] During the hearing, Plaintiffs' counsel advised that Plaintiffs do not contest the factual assertions in the affidavit.

Complete Care as being "a parent company for several of Ms. Lively's treating healthcare providers," Doc. 42-1 at 6, while Defendants refer to it as an "umbrella" entity and state that three of its associated entities – Interventional Associates, Integrative Physical Medicine of Lake Mary, and Central-Florida Imaging – provided medical treatment to Ms. Lively.[2] See Affidavit of Defense Counsel Dana Hoffman, Doc. 50-1, at 2, n. 1.

During discovery, defense counsel indicated her desire to take the depositions of several healthcare providers, including some who were associated with Complete Care. Doc. 50-1 at ¶5. Subsequently, Plaintiffs' counsel's paralegal advised defense counsel's paralegal that an attorney for Complete Care had asked to review the list of documents that would be subpoenaed from Complete Care-associated providers before any deposition dates were given. Doc. 50-1 at ¶5. Defense counsel's office requested an email address and the name of Complete Care's attorney so that a draft of a proposed subpoena could be submitted to that lawyer and Plaintiffs' counsel at the same time. Plaintiffs' counsel's office provided the email address of "legal@complete – care.com". Doc. 50-2.

---

[2] Consequently, and though the record is not explicit in this regard, it appears that the specific doctors who treated Ms. Lively may have been employed by these entities and not by Complete Care itself.

In late January 2021, defense counsel submitted to Plaintiffs' counsel a proposed list of documents that would be subpoenaed from the medical providers in relation to their depositions. The attorneys later reached an agreement on that proposed list. Doc. 50-1 at ¶¶6-7.

On January 28, 2021, with the consent of Plaintiffs' counsel, defense counsel's office sent to "legal@complete – care.com" draft subpoenas for Dr. Andrew Messer, Dr. Carlie Brush, and Dr. Edward Magee.[3]

A few days later, on February 3, 2021, a representative of Complete Care responded to the email and advised that all of Complete Care's depositions were then being handled by "Rosenberg Law, P.A." and requested that all further correspondence be directed to certain email addresses at that firm. Doc. 50-1 at ¶¶6-10.

The Rosenberg firm requested a conference call and therefore one was scheduled for February 9, 2021. Defense counsel states that she connected to the call, but that Plaintiffs' counsel could not connect. Attorney Rosenberg stated he was not inclined to wait for Plaintiffs' counsel to join the call and therefore he and defense counsel proceeded to discuss the proposed list of documents to be subpoenaed. Following the call, defense counsel contacted

---

[3] While the subject email references three draft subpoenas, only two have been attached as part of Exhibit 4 to the affidavit. Doc. 50-5.

5

Plaintiffs' counsel and notified him of her discussion with Attorney Rosenberg. Doc. 50-1 at ¶¶11-14.

Defense counsel then sent a follow up email to Attorney Rosenberg and Plaintiffs' counsel confirming both the revised list of documents to be subpoenaed and that deposition dates for healthcare providers associated with Complete Care would be provided. Doc. 50-1 at ¶15; Doc. 50-7.

Ultimately, two of Ms. Lively's physicians associated with Complete Care – Dr. Messer and Dr. Brush – were served with Notices of Deposition and Subpoenas and gave deposition testimony. See Doc. 50-1 at ¶17 & p. 5 at n. 3.

Later, defense counsel decided to pursue taking a Rule 30(b)(6) deposition concerning the billing practices of Complete Care. In that connection, on May 21, 2021, defense counsel contacted Stefanie Doncheva, a paralegal at Attorney Rosenberg's firm. Ms. Doncheva replied that Attorney Rosenberg would need to review the proposed list of designated topics and documents to be produced. Doc. 50-1 at ¶19.

On May 25, 2021, defense counsel sent a follow up email to Attorney Rosenberg. Doc. 50-1 at ¶21; Doc. 50-11 (the "May 25 Email"). This message was copied to other individuals associated with Attorney Rosenberg's firm, but Plaintiffs' counsel was not copied. The May 25 Email read:

> Thank you for facilitating the deposition of Dr. Messer in the matter involving Angela Lively. In preparation for trial, I am requesting the deposition of a Complete

6

> Care Center, LLC representative who is authorized to address Complete Care's charges to Angela Lively for services provided and also authorized to address if the charges can be satisfied by payment of an amount less than the amount charged.
>
> I am aware that Ms. Lively's passenger, Gwendolyn Butler, through her attorney, recently satisfied her charges from Complete Care for $30,000 compared to original billed charges of $142,309.
>
> I have also obtained a bill audit which indicates that the reasonable value of services offered to Ms. Lively by Complete Care providers total $75,406 compared to original billed charges of $284,152.57. In lieu of a trial deposition, I would be willing to discuss an affidavit or stipulation that Complete Care Center, LLC will accept $75,406 less any payments received from other payor sources in full satisfaction of Ms. Lively's charges.
>
> Please let me know how you would like to proceed.
>
> Doc. 50-1 at ¶21; Doc. 50-11.[4]

Attached to the May 25 Email were: (1) a Notice of 30(b)(6) Deposition of Complete Care (Doc. 50-11 at 2-6); and (2) a subpoena (Doc. 50-11 at 7-15). The Notice did not include a date or time for the deposition; however, the Notice was dated May 25, 2021 and bore the typed signature of defense counsel. In

---

[4] Defense counsel states that the proposal for an affidavit or stipulation was based on information that Complete Care had agreed to a substantial reduction in its medical charges to satisfy its lien regarding care provided to a passenger in Ms. Lively's vehicle. Counsel states that this reduction indicated to her that Complete Care might use a formula or other calculation for lien reductions. She also states that the proposed reduced amount was further based on the calculations of reasonable and necessary charges identified by Defendants' medical billing audit expert. Doc. 50-1 at ¶23.

7

addition, the Notice included a certificate of service that was dated May 25 and included the typed signature of counsel. The subpoena did not include a date or time and was not signed. Doc. 50-11.

On May 26, 2021, defense counsel's paralegal emailed Attorney Rosenberg (as well as others at his firm) advising that the Notice and subpoena that had been sent by defense counsel the previous day were the wrong drafts and attaching "correct drafts" of the Notice of Deposition and subpoena. Doc. 50-1 at ¶29; Doc. 50-12. Like the documents attached to the May 25 Email, the Notice of Deposition sent on May 26, 2021 did not include a date or time for the deposition but was signed and dated (now May 26) and did include a complete and electronically signed certificate of service (also dated May 26). The subpoena did not include a date or time and was unsigned. Doc. 50-12. Plaintiffs' counsel was not copied on the May 26, 2021 email.

The following day, a paralegal for the Rosenberg firm advised that they had not yet had time to review the Notice of Deposition topics and the list of documents to be produced. Doc. 50-1 at ¶30.

On May 28, 2021, the paralegal for the Rosenberg firm sent an email to defense counsel's paralegal (copied to defense counsel as well) asking for her availability for a telephone conference to discuss the proposed subpoena. Plaintiffs' counsel was not copied on that correspondence. Doc. 50-13.

It appears that June 1, 2021 was agreed upon as the date for that telephone conference and defense counsel states that she called the Rosenberg firm on that date. Attorney Rosenberg, however, was not available, his office provided his cell phone number, and defense counsel spoke with him regarding the requested deposition topics and documents to be subpoenaed relating to Complete Care's billing practices and medical charges. Doc. 50-1 at ¶32. It does not appear that Plaintiffs' counsel was advised of, or participated in, this call.

Defense counsel subsequently revised the list of documents that would be requested by way of subpoena and, on June 7, 2021, sent an email to Attorney Rosenberg attaching a revised Notice of Deposition (the "June 7 Email"). Doc. 50-1 at ¶34; Doc. 50-14. The June 7 Email read:

> Bruce, thanks for taking the time last week to discuss the proposed subpoena and Rule 30(b)(6) Notice of Deposition for Complete Care Centers LLC as it pertains to patient Angela Lively.
>
> My clients and I are willing to revise the request as follows:
>
> See attached Exhibit A for subject matter topics. I believe the list is mostly in line with our discussion.
>
> For the subpoenaed documents, I am willing to consider limiting the request as follows:
>
> Definition: "Complete Care Centers LLC" includes Integrative Physical Medicine, Centers for Imaging, Interventional Associates, Dr. Brush, Dr. Messer, Dr. Magee, Catherine Hurley, Augusto Cianciabella and any other health entity or healthcare provider within

> the Complete Care Centers LLC network that treated Angela Lively.
>
> 1. Documentation of all Complete Care Centers LLC's policies, procedures, training materials, criteria, guidelines or instructions that address when, why and/or the factors to be considered in adjusting and accepting less than the billed medical expenses in full satisfaction for services rendered by Complete Care Centers LLC's health care providers.
>
> 2. A copy of the financial hardship form used by Complete Care Centers LLC.
>
> 3. Documentation addressing the steps or process to adjust a patient's medical lien after settlement or verdict of the patient's litigation.
>
> This is the best I can do and still obtain the evidence necessary under North Carolina's statute. Please let me know if acceptable. If not, let me know. The subpoena was served on your law firm as requested on May 26, 2021. If Complete Care plans to object and seek a Protective Order, we need to start that process.
>
> Doc. 50-14.

The Notice did not include a date or time for the deposition and was not dated, though it did bear a typed signature of defense counsel. The certificate of service was also not dated but likewise included a typed signature of defense counsel.

On June 11, 2021, during a conference between counsel regarding pending discovery issues, Plaintiffs' counsel stated he had recently become aware of communications between defense counsel and a representative of Complete Care. Doc. 50-1 at ¶35; see also Doc. 42-1 at 1 n.1. Plaintiffs' counsel

advised he had a copy of the May 25 Email and requested copies of any additional emails sent to the Rosenberg Law Firm after May 25. Id. Immediately following that conference, defense counsel sent Plaintiffs' counsel the June 7 Email and attachment. Id.

On June 14, 2021, Defendants served a Notice of Subpoena, along with a copy of the revised subpoena for Complete Care, on Plaintiffs' counsel. Doc. 50-1 at ¶36; Doc. 50-16.

On June 17, 2021, Defendants served the Notice of Deposition and subpoena on Complete Care via certified mail sent to Complete Care's office, with copies to Plaintiffs' counsel and Attorney Rosenberg. Doc. 50-1 at ¶36; Doc. 50-17. The Notice of Deposition and subpoena included defense counsel's handwritten signatures.

## II. Discussion

Plaintiffs argue that sanctions are warranted because (1) Defendants improperly served the subpoena on Complete Care without providing the required three-day notice to Plaintiffs' counsel; and (2) defense counsel's communications with Attorney Rosenberg were unethical and made with the goal of altering material evidence (specifically, the amount of Ms. Lively's medical charges). See Doc. 42-1 at 13 ("The defense attempted an impermissible run around of the notice requirements of Rule 45 and engaged in multiple *ex parte* contacts with a representative of numerous treating health

care providers for Mrs. Lively. This abuse of process was done in an attempt to extract a material alteration to admissible evidence to the detriment of plaintiffs").

### A. Prior Notice of the Subpoena

Rule 45(a)(4) of the Rules of Civil Procedures requires that, before a subpoena is served on a third-party, a copy of the subpoena be served on each party to the case. The local rules of this district further provide that such service is generally required to occur at least three (3) calendar days prior to service of the subpoena on the non-party. LCvR 45.2 ("A notice of the issuance of a document subpoena to a non-party and a copy of the subpoena, as required by Fed. R. Civ. P. 45(a)(4), shall be served on all other parties at least three (3) calendar days before the date on which the subpoena is served on the non-party. This notice period may be altered by agreement of the parties or order of the Court"); see also Osborne v. Google, LLC, No. 1:18 MC 40-WCM, 2019 WL 118598 (W.D.N.C. Jan. 7, 2019).

Here, Plaintiffs argue that Defendants failed to comply with the notice requirement of Rule 45(a)(4) and LCvR 45.2 by serving a subpoena directly on Complete Care on May 26, 2021. In support of this position, Plaintiffs cite the June 7 Email to Attorney Rosenberg in which defense counsel stated that "[t]he subpoena was served on your law firm as requested on May 26, 2021." See Doc. 42-1 at 12.

In her affidavit, defense counsel states that she used the term "served" in the June 7 Email in "the generic sense," and "did not intend for the email to suggest that service had been attempted or perfected under the Rules of Civil Procedure…." Doc. 50-1 at ¶34. Defense counsel further asserts that the fields left blank in the documents sent on May 25 and May 26 are evidence that those attachments were intended to be proposed documents, and that the 30(b)(6) Notice attached to the May 25 Email inadvertently included counsel's signature and a date. Doc. 50-1 at ¶25; see also Doc. 50-12 (May 26, 2021 email to Attorney Rosenberg stating "We sent you the wrong draft of the NOD and Subpoena with Exhibit A. Please find the correct drafts attached").[5]

Additionally, defense counsel avers that formal service on Drs. Messer and Brush and formal service on Complete Care (for purposes of the 30(b)(6) deposition) was completed only by certified mail (that is, Attorney Rosenberg did not accept service). Doc. 50-1 at ¶37.

Having reviewed the parties' filings and heard the arguments of counsel, the undersigned is not persuaded that the actions of defense counsel amounted to actual service of a subpoena to Complete Care on May 25 or May 25. While the Notice of Deposition that was sent to Attorney Rosenberg on May 26 (and its predecessor on May 25) was dated and included a typed signature along

---

[5] It is also noted that the June 7 Email references "the proposed subpoena…"

with a certificate of service that was also dated and electronically signed, the subpoena did not include a date or time for the deposition and was not signed. In that regard, it appears that the inclusion of counsel's electronic signature on the Notice of Deposition and related certificate of service was a formatting error, and that defense counsel did not intend to effect formal service of the subject subpoena on May 25 or May 26.

Similarly, the record does not indicate that Attorney Rosenberg believed that defense counsel was attempting to serve active and enforceable subpoenas on Complete Care via email on May 25 and May 26.

In their Reply, Plaintiffs argue that allowing a defendant to send a proposed third-party subpoena without notice would "write out" the purpose of the notice requirement because it would preclude an opposing party from objecting to the substance of the subpoena. See Doc. 52 at 8. Such an argument is not applicable here, however; Defendants served the Notice of Subpoena with the revised subpoena for Complete Care on Plaintiffs' counsel on June 14, 2021 (three days prior to service on Complete Care), which provided Plaintiffs with an opportunity to object to the substance of the subpoena, and there is no evidence to suggest that Complete Care provided any information to Defendants in response to the draft versions of the subpoena.

## B. Communications with Counsel for Complete Care

Plaintiffs' primary argument in support of the Motion for Sanctions is that Defendants' "abuse of process was done in an attempt to extract a material alteration to admissible evidence to the detriment of plaintiffs." Doc. 42-1 at 13. Specifically, Plaintiffs argue that defense counsel's communications with Attorney Rosenberg – in particular, counsel's offer to negotiate an affidavit that Complete Care would accept $75,406 in satisfaction of Ms. Lively's medical charges – runs afoul of the North Carolina Supreme Court's decision in Crist v. Moffatt, 326 N.C. 326, 389 S.E.2d 41 (1990) and its progeny, as well ethics opinions issued by the North Carolina State Bar.

In Crist v. Moffatt, the North Carolina Supreme Court held that defense counsel could not interview a plaintiff's nonparty treating physician privately without the plaintiff's express consent. The court explained:

> We conclude that considerations of patient privacy, the confidential relationship between doctor and patient, the adequacy of formal discovery devices, and the untenable position in which *ex parte* contacts place the nonparty treating physician supersede defendant's interest in a less expensive and more convenient method of discovery.

326 N.C. at 336.

The scenario presented by this matter, however, differs from the facts of Crist. In her affidavit, defense counsel states that she "never had direct contact with any of Angela Lively's health care providers" Doc. 50-1 at ¶38, and, during

15

the hearing, Plaintiffs' counsel acknowledged that Plaintiffs were not aware of any direct communications between defense counsel and Ms. Lively's treating physicians themselves. That is, the information of record indicates that defense counsel did not communicate with medical professionals who provided treatment to Ms. Lively but rather communicated with an attorney (and his law firm) who represented a limited liability company that acted as an "umbrella" organization for medical practices with which Ms. Lively's physicians were associated, and that the communications concerned potential testimony regarding the amounts due for Ms. Lively's treatment. Plaintiffs have cited no authority finding that the prohibition set forth in Crist applies to these circumstances and, during the hearing, acknowledged that such authorities had not been located.

Further, the concerns created by direct contact between opposing counsel and a party's physician, as described in Crist, do not appear to be present in this particular context. See 326 N.C. at 335 (quoting Duquette v. Superior Court of Arizona, 161 Ariz. 269, 276, 778 P.2d 634, 641 (1989)).

## III. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion for Sanctions (Doc. 42) be **DENIED**.

Signed: August 23, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).