UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-119-MOC-WCM

| | | |
|---|---|---|
| **ANGELA SUE LIVELY, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **ROGER LANE REID, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on a Motion for Partial Summary Judgment filed by Defendant Reed and Sons, Inc. ("Reed's Auto"), (Doc. No. 61), and on a Motion for Partial Summary Judgment filed by Plaintiffs Angela Sue Lively and Louis Lively, (Doc. No. 63). The Court held a hearing on the motions on November 18, 2021.

### I.   BACKGROUND

This is a personal injury case arising out of a rear-end motor vehicle accident occurring on March 15, 2018, when a Chevrolet pickup truck operated by Defendant Roger Reed and owned by his employer Reed's Auto rear-ended a vehicle operated by Angela Lively. (Doc. No. 41-2, p 5). The crash happened in a construction zone on west-bound Interstate 26 in Buncombe County, North Carolina. (Id.; Pls. Ex. E, p. 26). Roger failed to stop and was going between 35 and 45 miles per hour at impact. (Pls. Ex. E, p. 25). Trooper Nicholas Kirkpatrick of the North Carolina State Highway Patrol cited Roger Reed at the scene for failure to reduce speed. (Doc. No. 41-2, p. 2). Roger plead guilty and paid a fine. (Pls. Ex. E, p. 54).

Plaintiffs allege that before the accident, Angela Lively "slowed her vehicle for traffic that was stopped on Interstate 26," "came to a stop without colliding with" other vehicles ahead

of her, and Roger Reed "failed to stop his vehicle in time to avoid hitting Angela's stopped vehicle." (Doc. No. 1-2, ¶¶ 13, 14, 17). It is undisputed that, at the time of the accident, Roger Reed was operating the vehicle as an employee of Reed's Auto and within the course and scope of his employment with Reed's Auto. (Doc. No. 8, ¶¶ 47, 48).

Plaintiffs allege that Roger Reed negligently operated Reed's Auto's motor vehicle and that Reed's Auto is liable for Roger Reed's negligence on theories of respondeat superior (Doc. No. 1-2, ¶¶ 47–50); negligent hiring, training, supervision, and retention (Doc. No. 1-2 ¶¶ 44–45); negligent hiring as an independent contractor (Doc. No. 1-2, ¶ 52); and/or negligent entrustment (Doc. No. 1-2, ¶¶ 72–77). Plaintiff Louis Lively, Angela Lively's husband, alleges a claim for loss of consortium. (Doc. No. 1-2, ¶¶ 81–82).

Finally, Plaintiffs allege that they are entitled to punitive damages against Reed's Auto.[1] (Doc. No. 1-2, ¶¶ 85–88). In support of their punitive damages claim and direct claims against Reed's Auto, Plaintiffs allege that Reed's Auto failed to provide Roger Reed "with appropriate and adequate driver safety training, failed to comply with applicable rules, and chose to ignore a pattern of bad driving and crashes." (Doc. No. 1-2, ¶ 30). In support of the punitive damages claim against Reed's Auto, Plaintiffs have presented evidence that Roger Reed was convicted of the following driving-related offenses between 1986 and 2009: driving under the influence and driving on a suspended license in 1986; driving under the influence, driving on a suspended license, driving with an open container, and marijuana possession in 1987; driving under the influence in 1991; driving under the influence and driving with an open container in 1996; driving under the influence and failing to stop in 1996, and driving under the influence and child

---

[1] Plaintiffs are not seeking punitive damages against Roger Reed. (Doc. No. 1-2, ¶¶ 85–88).

2

endangerment in a vehicle in 2009.² See (Doc. No. 64 at 6). Plaintiffs have also presented evidence that Roger Reed was involved in a vehicle collision on December 14, 2016, in which he failed to yield and struck another vehicle. (Pls. Ex. I).

Reed's Auto is a small, family-owned company. (Doc. No. 51-6, pp. 12–13). Reed's Auto hired family member Roger Reed to be a driver in the 1990s. (Id., p. 8). Before allowing Roger Reed to operate a vehicle as a Reed's Auto employee, the company confirmed that Roger possessed a valid driver's license by providing Roger's driver's license information to its insurance company "to see if he could drive." (Id., pp. 4–5). The insurer reviewed employees' driving records each year and informed Reed's Auto whether it authorized each employee to drive for the company. (Id., pp. 9, 12). Specifically, for Roger Reed, "[t]he [insurer] would let [Reed's Auto] know if he was capable of driving." (Id., pp. 4–5). Reed's Auto contends that, in this manner, Reed's Auto ensured that its drivers "had a good driving record." (Def. Ex. 1, p. 57).

At the time of the March 15, 2018 accident, Reed's Auto employed approximately 15 delivery drivers operating pickup trucks.³ (Def. Ex. 1, pp. 30, 92–93). The pickup truck Roger Reed was driving on the date of the accident was not a "commercial vehicle" under any applicable law. Plaintiffs contend that because Reed's Auto is a close-knit family business, it must have known about Reed's prior poor driving record. (Doc. No. 64 at 7). Reed's Auto's 30(b)(6) representative testified that Reed's Auto was not aware that Roger Reed had any

---

[2] Plaintiffs have also sought to introduce evidence on summary judgment of various prior criminal convictions against Roger Reed that are not related to driving and that are not relevant to Roger Reed's driving abilities.

[3] The company also owned one tractor-trailer vehicle that was operated exclusively by an independent contractor with a Commercial Driver's License ("CDL"). (Def. Ex. 2, pp. 74–75). Roger Reed never drove the tractor-trailer. (Id.).

3

citations or any other similar issue that would affect his legal ability to operate a motor vehicle in 2018. (Doc. No. 51-6, pp 6, 9–11).

Both parties have moved for partial summary judgment. In its motion, Defendant Reed's Auto moves for partial summary judgment on Plaintiffs' claims against it for punitive damages, and on Plaintiffs' direct claims for relief against Defendant for negligent hiring, retention, training, and supervision, and negligent entrustment.[4]

Plaintiffs have moved for partial summary judgment on Defendant's affirmative defense of contributory negligence and on Plaintiffs' claims for direct claims for relief against Defendant for negligent hiring, retention, training, and supervision, and negligent entrustment.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

---

[4] Defendant's motion also seeks dismissal of Plaintiff Angela Lively's claim for lost wages, but Plaintiffs voluntarily dismissed this claim on October 12, 2021. See (Doc. No. 65).

4

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

#### A. Plaintiffs' Punitive Damages Claim against Reed's Auto

To show that punitive damages are warranted against Reed's Auto, Plaintiffs must show by "clear and convincing evidence" that Reed's Auto engaged in aggravating conduct (fraud, malice, or willful and wanton conduct), and that specific conduct "was present and related to" Plaintiffs' injury. N.C. GEN. STAT. § 1D-15(a). For the purposes of the punitive damages statute, "malice" means "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C. GEN. STAT. § 1D-5(5). "Willful and wanton" conduct means "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or

5

should know is reasonably likely to result in injury, damage, or other harm." N.C. GEN. STAT. § 1D-5(7).

Here, Plaintiffs have not presented clear and convincing evidence on summary judgment that Reed's Auto engaged in aggravating conduct (fraud, malice, or willful and wanton conduct), or that the conduct "was present and related to" Plaintiffs' injury. (Doc. No. 1-2, ¶¶ 84–88). Plaintiffs argue that Reed's Auto acted maliciously, willfully, and wantonly in allowing Roger Reed to drive a pickup truck for them, in that they "fail[ed] to properly train, utilize, re-train, or supervise" Roger Reed and that they "entrust[ed] the subject vehicle" to Roger Reed "without ascertaining his competence to safely operate a motor vehicle." (Doc. No. 1-2, ¶¶ 86, 87). Plaintiffs note Roger Reed's various driving-related offenses before the March 2018 accident, including six DUIs, as well as the 2016 collision in which Roger Reed failed to yield to another vehicle. Reed's Auto denies knowing about Reed's past driving-related convictions, as well as the 2016 collision. Reed's Auto argues that it did not know, and had no reason to know, that employing Roger Reed and allowing him to drive a pickup truck was "reasonably likely to result in injury, damage, or other harm," nor did they "conscious[ly] or intentional[ly] disregard" such a risk. See N.C. GEN. STAT. § 1D-5(7).[5]

Even if Defendant Reed's Auto knew about Roger Reed's prior driving record, the decision to hire and retain him as a driver was not such aggravating conduct that punitive damages are warranted. At the time of the accident, Reed's Auto knew that Roger Reed was a licensed driver and that their insurer had approved him to drive after reviewing his driving record. (Doc. No. 51-6, pp. 9, 12). See, e.g., Dwyer v. Margono, 493 S.E.2d 763, 766 (N.C. App.

---

[5] When Reed's Auto renewed its insurance in May 2018, the company's insurer informed Reed's Auto that Roger could no longer drive on the company's behalf. Roger Reed stopped working for Reed's Auto after being dropped from the company's insurance.

1997) (affirming summary judgment on negligent entrustment claim because vehicle owner acted reasonably by confirming that the driver was licensed). Moreover, the evidence that Plaintiffs cite to claim that Roger Reed was an "incompetent" driver is too tenuous to support a claim for punitive damages. E.g., McAfee v. Howard Baer, Inc., No. 1:15cv182, 2018 WL 411339, at *6 (W.D.N.C. Jan. 12, 2018). That is, although it is undisputed that Roger Reed has six prior DUIs, the most recent DUI was in 2009, nine years before the 2018 crash. Moreover, it is undisputed that Reed was not intoxicated at the time of the 2018 crash. This Court addressed a similar fact pattern in McAfee v. Howard Baer, Inc. In McAfee, the plaintiff argued that the defendant employer ignored the obvious safety issues with the employee driver involved in a crash; the defendant employer knew or should have known that the violations and citations made the employee driver more likely to be involved in an accident; and the defendant employer's decision to ignore the safety issues and continue to provide the employee driver with a tractor trailer rose to the level of being in "conscious and intentional disregard of and indifference to the rights and safety of others." The evidence showed that the employee driver had received three prior citations over a three-year period, for "improper backing," "violation of [HOV] lane restrictions," and "failing to reduce speed to avoid a collision." This Court held that, despite the driver employee's poor driving record, the plaintiff had not shown willful or wanton conduct by the defendant employer. McAfee, 2018 WL 411339, at **6–7.

     Similarly, Roger Reed's driving history does not support a punitive damages claim against Defendant Reed's Auto. That is, even if Defendant Reed's Auto knew about the prior DUI convictions, its hiring and retention of Roger Reed as an employee driver does not rise to the level of willful and wanton conduct sufficient to warrant punitive damages. If the prior DUIs were closer in time to the 2018 accident and if Roger Reed were intoxicated at the time of the

7

2018 accident, or if Roger Reed had been charged with a recent DUI while driving as an employer for Reed's Auto, this evidence would likely be enough to get to the jury on punitive damages. See, e.g., Boyd v. L.G. DeWitt Trucking Co., 405 S.E.2d 914 (N.C. App. 1991) (where the employee driver had two prior DUIs, three reckless driving convictions, six speeding convictions, and where he was intoxicated at the time of the accident that killed the plaintiff's decedent, there was enough evidence to go to the jury on punitive damages against the trucking company based on negligent entrustment claim). Certainly, a driver with numerous DUIs should be a red flag for any employer. That fact is, however, here the DUIs occurred many years before the 2018 accident.

As for the December 14, 2016, accident Roger Reed was involved in, even if one prior accident were enough to satisfy "willful and wanton" conduct by Reed's Auto in retaining Roger Reed as an employee, there is no evidence that Reed's Auto knew about the 2016 accident. In her testimony on behalf of Reed's Auto, Debbie Reed testified that the 2018 accident with Angela Lively was "the first accident [Roger Reed] ever had." (Doc. No. 48-10, p. 4). Moreover, the December 14, 2016, accident is not listed on the log of reported accidents produced by Reed's Auto's insurer. (Def. Ex. 5, pp. 9–12). Thus, there is no evidence indicating that Reed's Auto consciously disregarded any risk Roger Reed posed to other drivers based on this one prior accident.

Plaintiffs have also failed to develop evidence supporting a punitive damages claim based on inadequate training or supervision.[6] North Carolina courts have held that inadequate training, on its own, does not establish willful and wanton conduct. Butt v. Goforth Props., Inc., 383

---

[6] While Plaintiffs initially attempted to hold Reed's Auto to standards of conduct from the Federal Motor Carrier Safety Regulations, none of those standards apply here. Indeed, Plaintiffs

8

S.E.2d 387, 389 (N.C. App. 1989); accord Justice v. Greyhound Lines, Inc., No. 5:16-CV-132-FL, 2018 WL 1570804, at *7 (E.D.N.C. Mar. 30, 2018); Collins v. St. George Physical Therapy, 539 S.E.2d 356, 360 (N.C. App. 2000). In Butt v. Goforth Props., Inc., the defendants failed to properly secure a trailer attached to their truck, and the trailer careened down a hill, hitting one of the plaintiffs. 383 S.E.2d at 387. Plaintiffs presented evidence that the crash occurred because of, among other things, "poor safety training and supervision" and a "violation" of "established construction standards." Id. at 388–89. The North Carolina Court of Appeals held that even if the evidence could support a negligence claim, "these facts do not rise to the level of willful and wanton conduct." Id. at 389.

Likewise, in Justice, after reviewing the requirements of North Carolina's punitive damages statute, the Eastern District of North Carolina granted summary judgment for Greyhound, which employed a commercial bus driver. The Justice court concluded that "even if Greyhound's procedures are insufficient to eliminate some risk, the evidence of record does not disclose any aggravating factor to distinguish such deficiency from mere failure to discharge that duty of reasonable care which underlies the tort of negligence." Justice, 2018 WL 1570804, at *7. Similarly, in Collins v. St. George Physical Therapy, the North Carolina Court of Appeals held that the plaintiff's evidence was insufficient to show willful and wanton conduct arising out of the defendant's improper repair of an exercise machine, even though the plaintiff showed that the defendant's employee "had no official training" in repairing such machines. Collins, 539 S.E.2d at 360.

---

appeared to concede at one point in the summary judgment hearing that the safety regulations do not apply.

Finally, to recover punitive damages, Plaintiffs must show that the allegedly aggravating conduct was "present and related to the injury" giving rise to the punitive damages claim. N.C. GEN. STAT. § 1D-15(a). Here, Plaintiffs have presented no evidence that the alleged willful and wanton conduct has any causal connection to the 2018 accident. As the Court has discussed, Roger Reed's prior DUIs happened years before the 2018 accident, and he was not intoxicated at the time of the 2018 accident.

For all these reasons, the Court finds that Plaintiff has not presented clear and convincing evidence of conduct by Defendant Reed's Auto for a claim of punitive damages to go to the jury. Thus, Defendant's summary judgment motion as to Plaintiffs' punitive damages claim is granted and Plaintiffs' punitive damages claim against Reed's Auto is dismissed.

### B. Plaintiffs' Claims of Direct Negligence against Reed's Auto

The Court next addresses the parties' respective summary judgment motions as to Plaintiffs' direct claims against Defendant Reed's Auto for negligent hiring, training, supervision, retention, and entrustment. The Court first notes that, in their response to Defendant's summary judgment motion, Plaintiffs contend that South Carolina law applies to these claims. For the following reasons, the Court disagrees and finds that North Carolina law applies.

Where, as here, the Court's jurisdiction is based on the parties' diversity of citizenship, "the Court 'must apply the substantive law of the state in which it sits, including the state's choice of law rules.'" Worley Claims Servs., LLC v. Jefferies, 429 F. Supp. 3d 146, 155 (W.D.N.C. 2019) (quoting Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599-600 (4th Cir. 2004)). "Accordingly, [this] Court must follow North Carolina's choice of law rules in determining which state's or states' law governs this action." Id. "Under the traditional

North Carolina rule, a tort occurs at the place where the last event takes place that is necessary to render the actor liable. Since injury is the last element of a tort, the traditional North Carolina rule applies the law of the place of injury." Simms Investment Co. v. E.F. Hutton & Co., 688 F. Supp. 193, 197 (M.D.N.C. 1988). "According to the lex loci test, the substantive law of the state 'where the injury or harm was sustained or suffered,' which is, ordinarily, 'the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place,' applies." SciGrip, Inc. v. Osae, 838 S.E.2d 334, 343 (N.C. 2020) (quoting Harco Nat'l Ins. Co. v. Grant Thornton LLP, 698 S.E.2d 718, 724 (N.C. App. 2010)).

Plaintiffs argue that this Court should apply the "most significant relationship" test—rather than North Carolina's longstanding and well-established lex loci rule—in determining whether North Carolina or South Carolina law governs Plaintiffs' claims for negligent hiring, training, supervision, retention, and entrustment against Reed's Auto. Plaintiffs argue that because South Carolina is where Roger Reed was hired and trained, the law of South Carolina has the most significant relationship to Plaintiffs' claims against Defendant for negligent hiring, training, supervision, retention, and entrustment. Plaintiffs further note that South Carolina law does not prohibit a plaintiff from pursuing a negligent hiring, training, supervision, or entrustment claim once respondeat superior liability has been admitted. James v. Kelly Trucking Co., 661 S.E.2d 329, 332 (S.C. 2008); see also Becker v. Estes Exp. Lines, Inc., No. CIV.A. 8:07-715-HMH, 2008 WL 701388, at *5 (D.S.C. Mar. 13, 2008) (holding that plaintiffs may pursue recovery under theories of negligent hiring, training, supervising, retention, and entrustment in addition to respondeat superior theory of liability). Plaintiffs contend, therefore, that under South Carolina law, the fact that Defendant has admitted respondeat superior does not defeat Plaintiffs' direct negligence claims against Reed's Auto.

11

The Court finds that the substantive law of North Carolina applies to Plaintiffs' claims against Defendant for negligent hiring, training, supervision, retention, and entrustment. As Defendant notes, as recently as 2020 in SciGrip, Inc. v. Osae, the North Carolina Supreme Court summarized and reinforced North Carolina's longstanding adherence to the lex loci doctrine in tort matters, noting that the state's "jurisprudence favors the use of the lex loci test in cases involving tort or tort-like claims." Id.; see, e.g., Boudreau v. Baughman, 368 S.E.2d 849, 853–54 (N.C. 1988) (holding North Carolina "has consistently adhered to the lex loci rule in tort actions" and stating "[w]e see no reason to abandon this well-settled rule at this time"); GBYE v. GBYE, 503 S.E.2d 434, 435 (N.C. App. 1998) ("For actions arising in tort, it is well-settled that the state where the injury occurred is considered the situs of the claim."). Here, it is undisputed that the injuries to Angela Lively occurred in North Carolina, the site of the accident. Thus, North Carolina law applies to Plaintiffs' direct negligence claims against Defendant Reed's Auto.

Under well-settled North Carolina law, because Reed's Auto has admitted that Roger Reed was acting within the course and scope of his employment with Reed's Auto during the March 15, 2018 accident, Plaintiffs' direct negligence claims against Reed's Auto fail. See Turner v. U.S.A. Logistics, Inc., No. 3:14-cv-289-DCK, 2016 WL 3607162, at *6 (W.D.N.C. July 1, 2016); Pracht v. Saga Freight Logistics, LLC, No. 3:13-cv-529-RJC-DCK, 2015 WL 5918037, at *8 (W.D.N.C. Oct. 9, 2015). That is, in North Carolina, where the allegations in a complaint are based both on the doctrine of respondeat superior and the employer's negligence in hiring, training, retaining, or entrusting a vehicle to an employee, and where the employer admits the agency relationship, the defendant employer's liability of the defendant must "rest on the doctrine of respondeat superior only and the negligent entrustment allegation would become irrelevant and prejudicial." Frugard v. Pritchard, 434 S.E.2d 620, 624 (N.C. App. 1993)

12

(emphasis added), rev'd on other grounds, 450 S.E.2d 744 (1994). The reason for this rule is that, when the employer admits the employment relationship and is already liable for the employee's negligent conduct, alternative theories of direct negligence against the employer unnecessarily add additional elements which, if proven, do not change the scope of liability but are substantially likely to prejudice the jury against the employer. E.g., Turner, 2016 WL 3607162, at *6; Pracht, 2015 WL 5918037, at *8. The only narrowly drawn exception to this rule is in a negligent entrustment case where the plaintiff's allegations as to negligent entrustment would have justified an award of punitive damages against the employer. Plummer v. Henry, 171 S.E.2d 330, 334 (N.C. App. 1969) (stating that "the plaintiff has not only alleged liability of the owner-defendant for compensatory damages on the negligent entrustment theory, but has further alleged facts which, if proved, would justify an award of punitive damages against the owner for his own wanton negligence. . . . Therefore, the defendants' stipulation [of respondeat superior] did not render immaterial the plaintiff's allegations as to negligent entrustment."). That exception does not apply here, as Plaintiffs' allegations and evidence do not justify sending the issue of punitive damages to the jury.

Plaintiffs argue that their claims against Reed's Auto for supervision, retention, and entrustment are "entirely independent" of respondeat superior negligence. Plaintiffs insist that, under North Carolina law, these claims may exist simultaneously, even where the employer has admitted liability under respondeat superior. (Doc. No. 66, p. 17). North Carolina case law does not support this contention. Indeed, as Defendant notes, Plaintiffs support this argument with cites to cases involving employees clearly acting outside the course and scope of their employment. See, e.g., Braswell v. Braswell, 410 S.E.2d 897 (N.C. 1991) (employee intentionally shot employee's wife); Smith v. Privette, 495 S.E.2d 395 (N.C. App. 1998)

13

(employee engaged in sexual misconduct); O'Connor v. Corbett Lumber Corp., 352 S.E.2d 267 (N.C. App. 1987) (employee committed burglary and rape); Wilkerson v. Duke Univ., 229 N.C. App. 670, 748 S.E.2d 154 (2013) (employee sued for intentional torts arising from physical altercation); Doe v. Diocese of Raleigh, 776 S.E.2d 29 (N.C. App. 2015) (employee committed sexual assault). Plaintiffs do not cite any cases where a North Carolina court deviated from the well-settled rule that respondeat superior and direct negligence claims cannot coexist when the defendant admits that the employee was acting within the course and scope of their employment, subject to the narrow Plummer exception that does not apply here. For this reason, the Court grants summary judgment to Defendant Reed's Auto as to Plaintiffs' direct claims of negligence against Defendant. Thus, Plaintiffs' claims against Defendant Reed's Auto for negligent hiring, training, supervision, retention, and entrustment are dismissed.[7]

### C. Defendant's Claim for Contributory Negligence

The Court next addresses Plaintiffs' motion for summary judgment on Defendant's claim for contributory negligence. "Contributory negligence is the breach of duty of a plaintiff to exercise due care for his or her own safety, such that the plaintiff's failure to exercise due care is the proximate cause of his or her injury." Scheffer v. Dalton, 777 S.E.2d 534, 541 (N.C. App. 2015). A "[p]laintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." Id.; see also Nicholson v. Am. Safety Util. Corp., 488 S.E.2d 240, 244 (N.C. 1997) ("At common law, '[a] plaintiff is contributorily negligent when he fails to exercise such care as

---

[7] Because the Court is dismissing these claims, the Court does not need to address Defendant's additional argument that Plaintiffs failed to present a required expert to testify on the duty of care owed by Defendant, or Defendant's other arguments supporting the dismissal of Plaintiffs' direct negligence claims against it.

14

an ordinarily prudent person would exercise under the circumstances in order to avoid injury.'")

(quoting Newton v. New Hanover Cnty. Bd. of Educ., 467 S.E.2d 58, 65 (N.C. 1996).

> Two elements, at least, are necessary to constitute contributory negligence: (1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury…. There must be not only negligence on the part of the plaintiff, but contributory negligence, a real causal connection between the plaintiff's negligent act and the injury, or it is no defense to the action.

Scheffer, 777 S.E.2d at 541 (quoting Ellis v. Whitaker, 576 S.E.2d 138, 141 (N.C. App. 2003)). "Since contributory negligence is an affirmative defense, the burden is on the defendant to prove more than a scintilla of evidence supporting each element of this defense to survive a motion for [summary judgment, directed verdict, or JNOV]." Ellis, 576 S.E.2d at 141.

Here, Defendant vaguely alleges that Plaintiff Angela Lively "engaged in conduct that was negligent when she failed to reduce her speed to avoid collision with the vehicle in front of her and by failing to see and exercise reasonable care related to other vehicles on the road" in a manner that constituted "contributory negligence." (Doc. No. 8, p. 8). But the only evidence in support of that defense is Roger's post-lawsuit, self-serving claim that Angela Lively rear-ended the vehicle in front of her—a claim not supported by the evidence. Here, Angela Lively, the police report, and two passengers in Lively's vehicle have all unequivocally indicated that only two vehicles were involved in the March 15, 2018 collision—those driven by Angela Lively and Roger Reed. Moreover, the State Highway Patrol Trooper investigating the wreck concluded in the crash report and has attested that Roger Reed was "the sole cause" of the collision. (Pls. Ex. F; Ex. Q, Statement of Trooper Kirkpatrick, p. 1).

Here, the Court finds that, as a matter of law, Defendant has not created a genuine issue of material fact with respect to contributory negligence. Therefore, the Court grants Plaintiffs'

15

summary judgment motion as to Defendant's contributory negligence claim, and the Court dismisses this claim.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Partial Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Partial Summary Judgment is **DENIED in PART** and **GRANTED in PART**.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Motion for Partial Summary Judgment filed by Defendant Reed and Sons, Inc., (Doc. No. 61), is **GRANTED**, and the Motion for Partial Summary Judgment filed by Plaintiffs Angela Sue Lively and Louis Lively, (Doc. No. 63) is **DENIED in PART** and **GRANTED in PART**.

Signed: January 14, 2022

Max O. Cogburn Jr.
United States District Judge